```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
UNITED STATES OF AMERICA,                    :
                                             :       MEMORANDUM AND ORDER
            -against-                        :       18-cr-561 (S-1) (DLI)
                                             :
KEITH WYCHE AND ONEIL ALLEN,                 :
                                             :
                  Defendants.                :
-------------------------------------------------------x
```

**DORA L. IRIZARRY, United States District Judge:**

Defendants Keith Wyche ("Wyche") and Oneil Allen ("Allen") (collectively, "Defendants") are charged by superseding indictment with conspiracy to distribute and possess with intent to distribute heroin and fentanyl in violation of 21 U.S.C. §§ 846 and 841(b)(1)(C), distribution of and possession with intent to distribute heroin and fentanyl in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C), and distribution of heroin causing serious bodily injury to another, to wit, "Jane Doe," in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C).  *See*, Superseding Indictment, Dkt. Entry No. 37.  Additionally, Wyche is charged with distribution of fentanyl causing the death of another, to wit, "John Doe," in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C).  *Id.*  Defendants jointly moved to suppress the photo identification and any in-court identifications made by Jane Doe.  *See*, Dkt. Entry Nos. 93-96.  The Government opposed the motion.  *See*, Gov't Opp., Dkt. Entry No. 98.  Defendants did not reply.  *See*, Dkt. Entry No. 99.

A suppression hearing was held on April 18, 2022.  After the hearing was concluded, the parties submitted additional briefs.  On May 5, 2022, Defendants filed their post-hearing briefs.  *See*, Allen Br., Dkt. Entry No. 135; Wyche Br., Dkt. Entry No. 136.  The Government filed its opposition to the post-hearing briefs on May 20, 2022.  *See*, Gov't Post-Hr'g Br., Dkt. Entry No.

139. Defendants chose not to file replies. *See*, Dkt. Entry Nos. 140, 141. For the reasons set forth below, Defendants' motion is denied in its entirety.

**I.     Findings of Credibility**

At the suppression hearing, the Government presented testimony from two law enforcement officers, New York City Police Department ("NYPD") Detective Philip Vaccarino ("Vaccarino") and NYPD Detective Stephen Napolitano ("Napolitano"). The Court finds both witnesses credible.

At the time of the hearing, Vaccarino had been a detective with the NYPD for over eight years and was assigned to the Narcotics Bureau in Staten Island. Suppression Hearing Transcript ("Tr."),[1] at 9:14-10:3. Before that, Vaccarino was assigned to the Street Narcotics Enforcement Unit ("SNEU"). *Id.* at 9:18-10:9. At the time of the hearing, Napolitano had been a detective with the NYPD for approximately five years and was assigned to the Detective Bureau in Staten Island. *Id.* at 81:9-16. Before that, Napolitano had been assigned to the Narcotics Bureau in Staten Island. *Id.* at 81:17-21. In 2017, both detectives were assigned to the Staten Island Narcotics Bureau's Opioid Overdose Task Force. *Id.* at 11:7-8, 82:4-11.

Defendants neither testified at the suppression hearing nor presented evidence. Defendants attached to their suppression motion the twenty-two photographs used in the photo identification procedure, a two-page complaint follow-up report ("DD5") describing the procedure, and search warrant materials describing the procedure. *See*, Search Warrant Materials, Def. Ex. A to Defs.' Notice of Mot., Dkt. Entry No. 93-1; Photos and DD5, Def. Ex. B, Dkt. Entry No. 96. Neither the DD5 nor the search warrant materials were entered into evidence at the hearing. Thus, the Court will not consider those documents. The Court will consider the twenty-two photographs and text

---

[1] As of the time of the issuance of this Memorandum and Order, the Suppression Hearing Transcript had not been filed on the docket but was accessible to all the parties and the Court.

messages that were entered into evidence at the hearing.  *See*, Text Messages, Gov't Hr'g Ex. 1; Photo Binder, Gov't Hr'g Ex. 2.

## II.     Findings of Fact

On October 27, 2017, Jane Doe overdosed in the vicinity of Travis Avenue and Victory Boulevard in Staten Island.  Tr. at 15:25-16:2, 17:2-6.  Vaccarino was notified of the overdose and went to the emergency room of Richmond University Medical Center ("RUMC") with Detectives Napolitano and Libretti to interview Jane Doe.  *Id.* at 19:7-13.  At RUMC, Vaccarino spoke with Jane Doe, who stated, in sum and substance, that she had used heroin she had purchased earlier that day from an individual named "Marco" who drives a white Jeep with black rims, and afterward woke up in the hospital.  *Id.* at 19:23-20:2, 24:2-16, 25:16-19.  Jane Doe further stated that "Marco" worked with an individual named "James" who drove a blue Infiniti.  *Id.* at 20:2-4.  Jane Doe also stated, in sum and substance, that she had met "Marco" and "James" about a month earlier, previously had purchased drugs from them and, during the first purchase, they had made her use a bag of heroin in their presence to ensure she was not an undercover police officer.  *Id.* at 25:17-26:15.  Jane Doe physically described both individuals as "male blacks."  *Id.* at 22:6-10.

Jane Doe provided to Vaccarino her text messages with "Marco" and "James," both of whom used the same phone number, and explained that, based on the coded text message she received in the morning from them, she knew whether "Marco" or "James" had the phone that day.  *Id.* at 20:4-8, 23:2-5, 26:15-25; *See also*, Text Messages.  Specifically, a "good morning" text meant "Marco" had the phone, and a "rise and shine" text meant "James" had the phone.  Tr. at 23:2-5, 26:15-25.

Vaccarino also had been investigating the narcotics overdose death of John Doe and noticed that similar morning text messages had been recovered from John Doe's cell phone.  *Id.* at

3

25:25-26:18. During the John Doe death investigation, Vaccarino had identified an individual by the name of Keith Wyche as the registered owner of an involved white Jeep with black rims. *Id.* at 17:15-18:8. Vaccarino clarified that Wyche's father was the registered owner of the white Jeep, and believes Wyche and his father share the same name. *Id.* at 56:6-11. Based on information from a witness in the Jane Doe overdose investigation, Vaccarino believed the same white Jeep was involved in both overdoses. *Id.* at 16:14-17:1, 18:9-21. In addition, prior to Jane Doe's overdose, Vaccarino observed Wyche driving a white Jeep with black rims. *Id.* at 77:15-22. Thus, Vaccarino believed "Marco" to be Defendant Wyche. *Id.* at 18:22-19:1.

After Jane Doe's overdose, Vaccarino participated in a series of controlled drug purchases using a confidential informant during which a blue Infiniti was involved. *Id.* at 40:14-18. Based on computer checks of the license plate of the blue Infiniti and observations made by Vaccarino during those sales, Vaccarino believed "James" to be Defendant Allen.[2] *Id.* at 41:8-20.

The next time Vaccarino met Jane Doe was to conduct a photo identification procedure. *Id.* at 36:16-19. Vaccarino used a photo binder containing twenty-two photographs that were placed in order randomly except that Vaccarino made sure that Wyche and Allen's photos were not presented consecutively. *Id.* at 38:1-2, 49:2-14. Vaccarino obtained these photographs from Facebook and the NYPD's computerized photo manager system. *Id.* at 39:19-24. Within photo manager, Vaccarino pulled up Wyche's, Allen's, and another suspect's photographs and selected the "like photo" option to generate photos of other individuals with similar height, weight, hair, and physical descriptions. *Id.* at 42:23-44:4. Vaccarino then selected from the photo manager

---

[2] In a footnote, Allen suggests that more than one individual could be "James" because, according to Allen's criminal history record, he was incarcerated in April 2017. However, this was not raised at the suppression hearing, and corroborating evidence such as the referenced criminal history record was not submitted for the Court's review. Even if true, this suggestion has no bearing on Jane Doe's overdose in October 2017 or interactions with Defendants a month earlier.

generated photos those that he believed resembled Defendants or the other suspect for inclusion in the photo book. *Id.* at 44:18-24. Vaccarino also included random photos from photo manager of individuals who resembled Defendants. *Id.* at 74:25-76:20. Ultimately, Wyche's photograph was on page five and Allen's photograph was on page seven of the photo book. *Id.* at 42:8-14.

On December 12, 2017, Vaccarino, Napolitano, and Lieutenant Farren met with Jane Doe in the vicinity of Bay Street and Victory Boulevard in Staten Island to conduct a photo identification. *Id.* at 37:11-15, 45:2-6. Jane Doe met the officers in their police vehicle, and sat in the backseat. *Id.* at 45:6-13. Vaccarino handed Jane Doe the photo binder and instructed her to look through the binder and tell him whether anybody looked familiar. *Id.* at 45:14-23; Photo Binder. Jane Doe identified Wyche's photo on page five as "Marco" and stated that was the person from whom she had bought heroin the day she overdosed and that he drives a white Jeep. Tr. at 46:5-13. Jane Doe also identified Allen's photo on page seven as "James" and stated that he drove a blue Infiniti. *Id.* at 46:14-17. During the photo identification, the officers did not indicate which photographs Jane Doe should identify, provide comments or information, or otherwise confirm whether Jane Doe had made a positive identification. *Id.* at 46:21-47:5.

After the photo identification, as a confidential informant under the supervision of the NYPD, Jane Doe participated in several controlled drug buys from the Defendants. On January 10, 2018, Jane Doe purchased heroin from "James" while inside the green Infiniti he was driving. *Id.* at 87:4-90:13. On January 15, 2018, Jane Doe unsuccessfully attempted to purchase narcotics from "James," who told Jane Doe "[t]he area is hot, I'm leaving." *Id.* at 47:18-48:6. Vaccarino then observed Allen drive a green Infiniti away from the location of the targeted drug purchase. *Id.* at 48:7-11. On February 8, 2018, Jane Doe purchased heroin from "Marco" while inside the white Jeep he was driving. *Id.* at 91:1-92:12.

**III.     Legal Standard and Analysis**

A pretrial identification will be excluded "only if the procedure that produced the identification is so unnecessarily suggestive and conducive to irreparable mistaken identification that the defendant was denied due process of law." *United States v. Brown*, 784 Fed. Appx. 1, 2 (2d Cir. 2019) (quoting *United States v. Bautista*, 23 F.3d 726, 729 (2d Cir. 1994)). "If pretrial procedures have been unduly suggestive, a court may nonetheless admit in-court identification testimony if the court determines it to be independently reliable." *United States v. Wong*, 40 F.3d 1347, 1359 (2d Cir. 1994), *cert. denied*, 516 U.S. 870 (1995); *See also*, *United States v. Gershman*, 31 F.4th 80, 92 (2d Cir. 2022) ("if the procedures were unduly suggestive . . . . we must consider whether the in-court identification is independently reliable"). Independent reliability is based on the totality of the circumstances, particularly "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *United States v. Al-Farekh*, 956 F.3d 99, 111 n.36 (2d Cir. 2020) (quoting *Neil v. Biggers*, 409 U.S. 188, 199 (1972)).

"[A photo] array is unduly suggestive if the defendant 'meets the description of the perpetrator previously given by the witness and the other [array] participants obviously do not.'" *United States v. Diaz*, 986 F.3d 202, 207 (2d Cir. 2021) (quoting *Raheem v. Kelly*, 257 F.3d 122, 133 (2d Cir. 2001)). While there is no controlling factor, "a court must consider . . . the size of the [photo] array, the manner of presentation by the officers, and the contents of the array." *Al-Farekh*, 956 F.3d at 111 (citations omitted).

Here, the photo array was not unduly suggestive because, *inter alia*, it was large, containing twenty-two photographs. *See*, *Id.* at 112 (noting that arrays with as few as six photographs have

6

been found to be not unduly suggestive). Notably, the photographs were presented in a non-suggestive manner given Vaccarino's directions, the random order in which the photographs were presented, and the lack of information, hints, or confirmation provided to Jane Doe by any officers present. Moreover, the array itself was assembled objectively, drawn from a pool of photographs that were generated by a computer program based on similar physical characteristics and then filtered by Vaccarino's selection of individuals who appeared similar to the Defendants. Having reviewed the photographs at the hearing, the Court notes that, with the exception of two individuals with tattoos and the third included person of interest, nothing about the array singles out Defendants from the other included individuals. While Defendants highlight the physical differences between the fillers and the Defendants' photographs, these were relatively minor and the other individuals do not need to be physically identical to the Defendants. *See*, *United States v. Bubar*, 567 F.2d 192, 199 (2d Cir. 1977) ("The due process clause does not require law enforcement officers to scour about for a selection of photographs so similar in their subject matter and composition as to make subconscious influences on witnesses an objective impossibility."). "[W]here, as here, there is a large display of photos arranged in no particular order or format, and the interrogators do not intimate which picture the witness should identify, the identification procedure is not impermissibly suggestive." *Al-Farekh*, 956 F.3d at 112. Therefore, the photo identification procedure was not unduly suggestive.

Defendants contend that: (1) NYPD improperly classified the identification procedure as a confirmatory identification; (2) NYPD's traditional policies regarding photo arrays should have been followed, including the use of a "triple blind" procedure where Vaccarino would not have prepared or administered the array; and (3) Defendants should have been presented in separate arrays. While these procedures possibly may reduce the risk of a suggestive identification, no

7

evidence was submitted indicating that the actual procedures used were unduly suggestive. Moreover, failure to follow the NYPD's own policy, without more, is not a constitutional violation, particularly under the circumstances of this case.

Additionally, the government established the independent reliability of Jane Doe's photographic identification of Defendants. Jane Doe's prior familiarity with Defendants based on her drug purchases from them over the course of the month leading up to her overdose provides an adequate basis to treat the identification procedure as a confirmatory identification because Jane Doe and Defendants were not strangers. *See*, *United States v. Stephenson*, 2021 WL 4972601, at *4 (E.D.N.Y. Oct. 26, 2021) ("*Biggers* typically concerns the reliability of an eye witness' identification" as opposed to a confirmatory identification by someone previously familiar with the defendant); *See also*, *United States v. Nieves*, 2021 WL 1240472, at *3 (S.D.N.Y. April 1, 2021) ("courts in this circuit have held that identification procedures consisting of the display of a single photograph to a witness who states that the witness already knows the perpetrator, in order to confirm the perpetrator's identity, are not unduly suggestive"). Importantly, Jane Doe's prior familiarity with Defendants demonstrates a lack of suggestiveness.

Defendants argue that the identification procedure was inherently unreliable because of Jane Doe's description of Defendants as "male black," her cross-racial identification, and Vaccarino's cross-racial selection of pictures for inclusion in the photo array. These arguments are meritless for several reasons. First, Defendants discount the long-term investigative process detailed by Vaccarino by which Defendants were identified as suspects. Defendants were not selected because they were "male blacks," but because text messages, witnesses, vehicle records, and controlled drug buys inculpated them. Second, no evidence has been submitted as to Jane Doe's race, making any argument as to cross-racial identifications speculative. Third, Vaccarino

detailed the process by which he selected photo fillers for the identification by drawing from a data base that electronically provided photos of individuals with similar physical characteristics as Defendants.

*United States v. Nolan*, 956 F.3d 71 (2d Cir. 2020), on which Defendants rely, is distinguishable. Unlike this case, in *Nolan*: (1) the defendants' faces were covered during the armed robbery of the victims; (2) the victims did not have prior interactions with the defendants; (3) a victim improperly was shown photos of a defendant on Facebook; and (4) that victim improperly discussed his identification with the other victims prior to their own identifications of the defendants. *Id.* at 75. Here, none of the improprieties in *Nolan* were present, and Jane Doe, independent of any police involvement, interacted with Defendants prior to the day of her overdose and her identification of their photographs.

Even if the identification procedure was unduly suggestive, the totality of the circumstances, including Jane Doe's various independent dealings with Defendants before and after the identification on multiple dates, make an in-court identification by Jane Doe independently reliable. Therefore, an independent basis also supports the reliability of an in-court identification by Jane Doe and its admissibility.

**IV.  Conclusion**

For the foregoing reasons, Defendants' motion is denied in its entirety.

SO ORDERED.

Dated: Brooklyn, New York
       June 20, 2022

                                                          /s/
                                                  DORA L. IRIZARRY
                                                United States District Judge

9